## GRAU, Jr. et, v. KRAMER et.

Common Pleas Court, Hamilton County.

No. A-119230.   Decided January 31, 1950.

Dunham Matthews, Louis A. Peckstein, Cincinnati, for plaintiffs.

Ernest W. Stockmeier, Edwin J. Franks, John A. Scanlon,. G. H. Hermerding, Cincinnati, for defendants.

### OPINION

By PECK, J.

The various parties to this action are the owners of adjacent pieces of property. Without going into details which. are here felt to be unnecessary, suffice it to say that the property of the plaintiffs is of a higher elevation than that. of the defendants. The defendants' properties lie to the south, and are each successively lower in elevation. The properties are on the west side of a road, and all slope somewhat to the east or down toward the road, and in front of the property of the southermost of the defendants a culvert passes under the road and discharges into a field on the other side. With

the exception of three of the defendants' properties all are improved residential sites.

It is rather difficult to briefly restate the prayer of the petition insofar as it pertains to the injunctive relief sought because the relief prayed for is not the same as to all defendants. In essence, the plaintiffs seek a mandatory injunction to cause the defendant to unblock a tile drain line which runs down hill from their property across defendants' properties and empties into a catch basin from which the flow is through the culvert under the road, and they further seek a perpetual injunction causing defendants to permit said line to remain open.

All but two of the defendants (who were not originally made parties but who were named defendants after their interest in one of the properties was developed during the trial) were represented by counsel. Four of the defendants filed an answer and cross-petition in which they seek in addition to money damages, an injunction restraining the plaintiffs from discharging sewage over their lands.

During the trial it was established that sanitary sewage from the plaintiffs' house passed to a septic tank located just south of their property and on a strip owned by the defendant Lillian Kramer; that the effluent from this tank went into the tile drain above referred to, through which until recently it passed underground to the catch basin, thence through the culvert under the road. Joe Kramer, husband of the defendant Lillian, testified that his father had formerly owned and occupied the premises now owned by the defendants Becker and that his father also formerly owned the properties now owned by the defendants Kramer and Landwehrs, and that owned by the plaintiffs; that in 1921 he conveyed the land now comprising the latter property to the witness, Joe Kramer; that Joe Kramer erected the house now occupied by the plaintiffs and caused the septic tank above referred to to be built; and that the said tile drain had been used to carry off the effluent from the tank continuously since 1921. The plaintiff Grau testified that the defendant George F. Becker stopped up the drain, that thereafter there was difficulty with it, but that there had been no trouble with the drain theretofore. The plaintiff further testified that as a result of such stoppage of the drain sewage backed up into his cellar causing an obnoxious condition to exist. Sworn as on cross-examination, one of the defendants testified that she had caused the catch basin at the lower end of the drain line to be filled in with cinders.

The defendants' testimony tended to show that prior to the blocking of the drain line, the soil above this line, which cut across the front yards of several of their homes, was continually soft and soggy; that noxious odors emanating from the line deprived them of some of the use of their front lawns and porches; and that overflow from the septic tank containing human excrement, contraceptives and other repulsive materials created an obnoxious and unhealthful condition.

With the approval of all of counsel the court made an inspection of the premises in the absence of counsel. This view of the premises was made during the afternoon on December 21, 1949, when the weather was moderately cool. Only the exterior was viewed, no attempt being made to inspect the basement of the plaintiffs' home, the condition there existing not being felt a determining factor in the case. It is assumed that the condition described by the plaintiffs, and not controverted in any way by the defendants, did in fact exist. So far as the present action is concerned, if the plaintiffs are not legally entitled to relief against these defendants, this condition is their personal problem. The view of the premises disclosed the existence of no offensive odors at that time and no external evidence of the existence of the drain line under the properties of the defendants.

If any right to the continued use of the drain exists in the plaintiffs it must, of course, be by virtue of an easement. An easement may be created either by grant, express or implid, or by prescription. (We need not here consider easements by implied reservation.) The plaintiffs filed no brief or memorandum, but counsel in oral argument cited numerous authorities. In that argument it was claimed that an easement by prescription had been created, but some of the authorities cited concern themselves with easements created by grant (e. g., Keyler v. Eustis, 13 O. N. P. (N. S.) 601, and **Freiden v. Western Bank & Trust Co., 72 Oh Ap 471, 27 O. O. 419**).

In order to be entitled to relief in this court, the plaintiffs must be entitled to relief against every defendant. If they have no right to maintain the drain line across any one parcel it becomes unnecessary to consider their rights as to the other parcels, as equity will not make a vain decree. With this in mind, attention is directed to the property held by the defendants Becker. This parcel was owned by Albert Kramer, who was the ancestor in title of all of the defendants except Emig and Spatz, until he conveyed to the Beckers on June 25, 1943. In 1921 he deeded the parcel now owned

by the plaintiffs to his son, and after that conveyance the drain line was constructed. Not only did Albert Kramer consent to the construction of this line, but he also assisted in the construction. The only relationship between the father and son, so far as this record discloses, which can be termed contractual was the actual deed of conveyance. Neither in that document nor in any other introduced is there any conveyance of an easement, and thus there exists no evidence of the creation of an easement by express grant; no more is there evidence in the record which would justify the finding of an implied grant. The construction having been done with the knowledge, consent and even cooperation of the owner of the servient estate no claim of adverse possession can be made against him. Thus it must be concluded that the original use was permissive, no other conclusion being possible under the evidence.

It is well settled that no length of enjoyment by permission can ripen into an easement (**Ry. Co., v. Donovan, 111 Oh St 341,** and cases there cited), and it therefore becomes pertinent to inquire whether the character of the use changed at any subsequent time. Here the owner of the original servient estate retained ownership, as has been pointed out, of a portion of the estate until 1943. There is no evidence which would justify finding any change in the character of this use of the line as permissive, and under the accepted rule that once a condition is found to exist it will be presumed to continue until the contrary is shown, it must be found that at least until June 25, 1943, the use of the line through the Becker property by plaintiffs' predecessors in title was permissive. It must therefore follow that no right by easement exists in the plaintiffs to use so much of the line as passes under the property owned by the defendants Becker.

Inasmuch as the period which has passed since the acquisition of this property by the Beckers is not sufficient to create a right by prescription it becomes unnecessary to consider the character of the use during that period. Further, for the reasons previously indicated, no determination is made with reference to what right plaintiffs may have acquired with respect to the other parcels.

All of the authorities cited to the Court have been carefully considered. In most of these cases there is a problem created by severance, usually of the dominant estate from the servient. These cases are not felt to be applicable, since we here have no severance problem. While it is true that the dominant estate was formerly a part of the same parcel as most of the parcels constituting the servient estates, the-

dominant estate was severed **before** the drain line was constructed. Thus the fact that it happened to be at one time a part of the same tract is entirely without importance.

The situation presently existing as found both from the evidence and from the view of the property made by the court justify no action on the prayer of the cross-petition for injunctive relief. The submission of this case to the court was expressly limited by statement of counsel at the close of the testimony to a consideration of the two motions for restraining orders. Accordingly no further finding is made at this time, but both motions will be overruled.